## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SURENDRA ARORA and LAURENTIU RUSSO, | ) ) ) | No.    2:23-cv-2274 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| UHNDER, INC., a Delaware Corporation, and SANJAY PATEL, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Surendra Arora and Laurentiu Russo (together, the "Plaintiffs"), by and through their attorneys, TABET DIVITO & ROTHSTEIN LLC, hereby bring this Complaint against Defendants Uhnder, Inc. ("Uhnder") and Sanjay Patel (together, the "Defendants"), and allege as follows:

## INTRODUCTION

1.      This is an action to hold the Defendants responsible for their unlawful and fraudulent scheme to intentionally cheat the Plaintiffs out of millions of dollars, all under the guise of a supposedly arms-length corporate merger based on undisclosed conflicts of interest, knowingly false representations, and secret plans to "trash" the value of the stock that Plaintiffs were to receive in the transaction.

2.      The Plaintiffs were shareholders in a company called DigitalGemini, Inc. ("DG"). DG was a start-up company originally created by undergraduate students at the University of Illinois Urbana-Champaign ("U of I") to develop and commercialize their cutting-edge AI-generated synthetic data for digital radar technology.

3.      Patel is, and at all relevant times has been, a Professor of Electrical and Computer Engineering at U of I. He also was a director and officer of DG, and he held himself out to be a

trusted business advisor for the undergraduate students at U of I who created DG's technology and those who invested in it.

4.  Patel encouraged the Plaintiffs to invest in DG and, at Patel's urging, the Plaintiffs invested hundreds of thousands of dollars.

5.  Unbeknownst to the Plaintiffs, Patel had a secret, lucrative consulting agreement with Uhnder—a target customer that sought to acquire DG's technology for minimal consideration. Patel also had a longstanding professional and personal relationship with Uhnder's CEO, Manju Hegde.

6.  In the spring of 2022, after secretly sabotaging DG's other potential business opportunities, the Defendants urged the Plaintiffs to merge DG and Uhnder, promising lucrative returns. Patel offered to act as the DG shareholders' trusted representative in negotiating the transaction. But, as subsequent events made clear, Patel could not be trusted at all.

7.  After supposed negotiations, Patel and Hegde presented the Plaintiffs with their offer: a modest amount of cash plus significant shares of Uhnder stock, in exchange for Uhnder acquiring DG's valuable technology. Patel and Hegde specifically emphasized the value of the Uhnder stock that the Plaintiffs would acquire as part of the transaction, representing that Uhnder was worth nearly $400 million and that its value would double when Uhnder closed its upcoming round of funding, which the Defendants represented was imminent. All told, the Defendants represented that the Plaintiffs would acquire nearly $2 million in Uhnder stock as part of the transaction, and that that amount would soon double.

8.  The Plaintiffs agreed to the merger based on the Defendants' representations. At the Defendants' insistence, DG and Uhnder rushed to complete the transaction in a matter of weeks based on the Defendants' representation that the merger needed to be completed before the

purportedly imminent funding round that would double the value of the company and the Plaintiffs' newly acquired stock.

9.      But that promised round of funding never occurred. Instead, immediately after the merger was complete, the Defendants—including Patel, who negotiated a new consulting agreement with Uhnder as part of the transaction—went silent and refused to respond to the Plaintiffs' repeated requests for information.

10.     It is now clear why the Defendants avoided the Plaintiffs once the merger was complete. In August 2023, the Plaintiffs discovered that Uhnder never had the funding it claimed to have had in order to induce the Plaintiffs into agreeing to the merger. Instead, Uhnder was secretly planning to recapitalize, with Uhnder's CFO admitting that certain of the company's shareholders—including the Plaintiffs—would get "trashed" in the process.

11.     That is precisely what happened. In September 2023, Uhnder completed a refinancing that reduced the value of the Plaintiffs' stock to virtually zero. As a result, Uhnder, with Patel's assistance, acquired DG's valuable technology for nothing but false promises.

12.     The Defendants' egregious misconduct before, during, and after the transaction amounts to breach of contract, breach of fiduciary duty, and statutory and common law fraud. Through this action, the Plaintiffs seek to hold the Defendants liable for their misconduct and to be made whole.

## **PARTIES**

13.     Plaintiff Surendra Arora is a citizen of California.

14.     Plaintiff Laurentiu Russo is a citizen of Nevada.

15.     Defendant Sanjay Patel is a citizen of Illinois.

16.     Defendant Uhnder, Inc. is a Delaware corporation with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under federal law. The Court may also assert supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' state law claims because they are related to, and form part of, the same case or controversy.

18.     The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because each of the parties are citizens of different states and the amount in controversy exceeds $75,000.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the actions or omissions giving rise to the claims occurred in this district.

## FACTS

**A.      Patel induces the Plaintiffs to invest significant capital in DG.**

20.     Arora met Patel in 2019, when Patel, an engineering professor at U of I, began working as a consultant for Arora's employer.

21.     Around the same time, Patel started a student-led technology innovations incubator at U of I which aimed to raise capital to fund and commercialize student projects.

22.     Patel urged the Plaintiffs to fund several projects under development in the incubator, including DG, which created revolutionary digital radar for automotive safety applications. Patel was a DG shareholder and board member.

23.     The Plaintiffs agreed to fund DG based on Patel's representations that the company's revolutionary technology was extremely valuable. Russo invested $250,000 and Arora

invested $25,000. The Plaintiffs received shares of stock in DG in exchange for their investments. Russo became a board member. Arora became a board advisor.

24.     The Plaintiffs provided 85% of DG's initial funding.

**B.     The Defendants conspire to steal DG's technology and sabotage its business opportunities.**

25.     In or around 2021, DG entered into a one-year services contract with Uhnder, a digital radar company which purports to deliver "best-in-class" digital radar safety products. Importantly, the services contract between DG and Uhnder did *not* include a licensing agreement for Uhnder to use DG's revolutionary technology. The agreement was for services only.

26.     In or around early 2022, as the one-year services contract between DG and Uhnder approached its expiration, Patel began negotiations with Uhnder to renew the agreement. Patel had a twenty-year relationship with Uhnder's CEO, Hegde, and assured the Plaintiffs that he could negotiate a beneficial contract for DG.

27.     Unbeknownst to the Plaintiffs, however, Patel had already executed a new contract with Uhnder on DG's behalf, without the board's approval.

28.     On April 5, 2022, Patel sent the Plaintiffs a copy of the newly executed contract between DG and Uhnder. This contract, however, was not the same sort of services contract the parties had previously shared. Rather, the new contract included a licensing agreement that gave Uhnder unfettered and perpetual access to all of DG's technology for a nominal price. In essence, Patel had given away DG's technology for next to nothing.

29.     After learning about the licensing agreement, the Plaintiffs confronted Patel and demanded answers. In the course of those discussions, Patel inadvertently disclosed to the Plaintiffs that he had an ongoing, long-standing, and highly lucrative consulting agreement with Uhnder—something that he had never previously disclosed to the Plaintiffs.

30.     The Plaintiffs responded that Patel's undisclosed personal business dealings with Uhnder created a created a clear conflict of interest and demanded that Patel end his consulting engagement with Uhnder. Patel agreed to end the consulting engagement and assured the Plaintiffs that representing DG's interests was his only priority.

31.     By that point, however, the damage was done: Uhnder had already acquired a perpetual license for all of DG's products.

32.     Worse still, Patel lied to the Plaintiffs: He did not, in fact, end his lucrative consulting agreement with Uhnder.

**C.      The Defendants induce the Plaintiffs to enter into a merger agreement through knowingly false representations.**

33.     On April 18, 2022, days after he virtually gave away DG's technology to Uhnder, Patel told the Plaintiffs that Uhnder was interested in acquiring DG. With few viable customers in light of the unfair licensing agreement, the Plaintiffs agreed to explore the merger.

34.     Patel represented to the Plaintiffs that he would be the most effective negotiator given his relationship with Hegde and his prior dealings with Uhnder.  As a result, Patel acted as DG's lead negotiator during the merger negotiations.

35.     On April 24, 2022, Hegde sent Patel a proposed offer to acquire DG for a total of $430,000 in cash, plus "$3.75M worth of Uhnder common stock valued at the May 2020 Series C price of $4.65/share." A true and correct copy of the April 24, 2022 email containing Hegde's offer is attached as **Exhibit A**.

36.     Patel forwarded Hedge's offer to the Plaintiffs, who initially rejected the offer and expressed that they wanted a cash-only buy-out.

37.     Patel told the Plaintiffs that Uhnder would not increase the cash portion of its offer and urged the Plaintiffs to "consider the value of the stock [Uhnder] is providing" in deciding

6

whether to agree to the merger. (*See* Ex. A.) Patel represented that the stock was worth millions of dollars and would double in value when Uhnder closed on its imminent funding round.

38.     Specifically, Patel told the Plaintiffs that Uhnder had "a lead investor for their Series D [funding] round with nearly a 2x in valuation ($350M → $700M), which they plan to close by July" and "an IPO timeline of 2024." (*Id.*)

39.     On April 26, 2022, the Plaintiffs had an hourlong telephone call with Patel, Hegde, and several other Uhnder executives.

40.     During that call, Hegde acknowledged that the cash portion of Uhnder's offer was low, but assured the Plaintiffs that Uhnder stock was the real "currency" by which to effectively value the acquisition. Hedge said that the series D funding round was a done deal—the term sheets had been finalized and the close was imminent. He further told the Plaintiffs that despite the deal's current $700 million valuation, Uhnder would be worth closer to $1 billion if it were to acquire DG's valuable technology.

41.     Hegde also told the Plaintiffs that, because the series D funding would close by July 2022, the Plaintiffs needed to approve the DG acquisition as quickly as possible. He warned the Plaintiffs that they would lose out on this highly lucrative opportunity if they did not finalize the merger quickly.

42.     In the days following the April 26, 2022 telephone call, Patel repeatedly told the Plaintiffs that time was of the essence and emphasized that any merger between Uhnder and DG had to occur before the July 2022 funding round closed.

43.     The Plaintiffs agreed to the merger based on the Defendants' representations that the Series D funding round was a done deal and regarding the value of the Uhnder stock they would receive as consideration for the merger.

**D.**     **Uhnder acquires DG.**

44.     Uhnder and DG, through Patel, executed an "**AGREEMENT AND PLAN OF REORGANIZATION by and among UHNDER, INC., NUMERICAL JUNE, INC., DIGITALGEMINI, INC., and Sanjay Patel, as Stockholder Representative**" (the "Merger Agreement"), finalizing the merger between Uhnder and DG, on June 27, 2022—days before Uhnder purportedly planned to close the alleged funding round. A true and correct copy of the Merger Agreement is attached as **Exhibit B**.

45.     As a condition of Uhnder's buyout offer, Uhnder and Patel required the Plaintiffs to appoint Patel as DG's "Shareholder Representative" and grant him power to act as the Plaintiffs' "exclusive representative, agent, proxy, and attorney-in-fact" to negotiate, finalize, and execute the Merger Agreement. (Merger Agreement § 10.0.)

46.     Under the Merger Agreement, Uhnder represented and warranted that:

> No representation or warranty made by [Uhnder] in this Agreement, the certificates delivered pursuant to this Agreement, or the Related Agreements contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements contained herein and therein, in light of the circumstances under which such statements were made, not misleading.

(*Id.*, § 4.8.)

47.     As a result of the acquisition, the Plaintiffs acquired Uhnder stock that, according to the Defendants' representations, was collectively valued at nearly $1.3 million and set to double within a matter of days.

48.     Unbeknownst to the Plaintiffs, and against their express wishes, Patel retained his initial consulting agreement with Uhnder throughout the merger process. Patel also negotiated a lucrative new consulting contract with Uhnder as part of the Merger Agreement.

**E.      Following the acquisition, the Defendants cease communication with the Plaintiffs, fail to complete the allegedly "imminent" billion-dollar funding round, and instead complete a down round that renders the Plaintiffs' shares valueless.**

49.      Following the acquisition, the Plaintiffs reached out to Uhnder's officers and directors on multiple occasions to ask about the company's series D funding. However, the Plaintiffs received no response regarding the status of the funding.

50.      The Plaintiffs also regularly reached out to Patel between the summer of 2022 and August 2023 regarding the status of Uhnder's funding. Again, the Plaintiffs received no response to their inquiries.

51.      Finally, in August 2023, Patel disclosed to the Plaintiffs that Uhnder's Series D funding round never closed and that Uhnder would be completing a "recap round," valued at just $5 million, which would "wipe out the ownership history of the company and create a new beginning," and which would "favor new investors and employees" over existing investors like the Plaintiffs. Alarmed, the Plaintiffs again demanded to meet with Patel and Uhnder.

52.      On August 31, 2023, the Plaintiffs met with Patel and Uhnder's CFO, Joe Bedewi, via teleconference. On that call, Bedewi confirmed that Uhnder would be recapitalizing, that the recapitalization would lower Uhnder's valuation to $5 million, and that "[a]nybody who had prior investment"—like Plaintiffs—would get "trashed." Bedewi also admitted that Uhnder had failed to inform its common shareholders about the recapitalization because it was trying to keep the process "somewhat enclosed."

53.      On September 8, 2023, Uhnder notified its shareholders that, on August 11, 2023, Uhnder completed a refinancing round, which it characterized as "a new beginning" for the company that "[f]avors new investors and employees" while penalizing existing investors.

54.      As a result of the refinancing, the Plaintiffs' Uhnder stock is now worthless.

55.     The Plaintiffs attempted to resolve the parties' dispute prior to litigation, but the Defendants were not interested in a resolution.

## COUNT I
### (Breach of Contract – Uhnder, Inc.)

56.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

57.     The Merger Agreement is a valid and enforceable contract.

58.     The Plaintiffs have performed all of their obligations under the Merger Agreement.

59.     In the Merger Agreement, Uhnder guaranteed that "[n]o representation or warranty made by [Uhnder] in this Agreement, the certificates delivered pursuant to this Agreement, or the Related Agreements contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements contained herein and therein, in light of the circumstances under which such statements were made, not misleading." (Merger Agreement, § 4.8)

60.     Uhnder breached the Merger Agreement by intentionally omitting and/or misrepresenting the true value of Uhnder's stock and by intentionally omitting and/or misrepresenting the status of the series D funding, material facts intended to mislead the Plaintiffs and induce them into entering into the Merger Agreement.

61.     Further, Uhnder breached the duty of good faith and fair dealing implied in every contract by intentionally omitting and misrepresenting the true value of Uhnder's stock, by intentionally misrepresenting to the Plaintiffs that Uhnder planned to "imminently" close on a highly lucrative Series D funding round by July 2022, and that "time was of the essence" for DG to close the deal.

62.     As a proximate result of Uhnder's breach of contract, the Plaintiffs have been damaged and continue to suffer damages.

## COUNT II
### (Breach of Contract – Sanjay Patel)

63.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

64.     On June 22, 2022, DG's shareholders, including Patel and the Plaintiffs, executed a written consent confirming Patel's appointment as Stockholder Representative for purposes of DG's merger with Uhnder (the "Written Consent"). A true and correct copy of the written consent is attached as **Exhibit C**.

65.     The Written Consent is a valid and enforceable contract.

66.     The Plaintiffs have performed all of their obligations under the Written Consent.

67.     Patel breached the duty of good faith and fair dealing implied in every contract by intentionally omitting and misrepresenting the true value of Uhnder's stock, by intentionally misrepresenting to the Plaintiffs that Uhnder planned to "imminently" close on a highly lucrative Series D funding round by July 2022, and that "time was of the essence" for DG to close the deal. Patel did so to induce the Plaintiffs to enter into the Merger Agreement.

68.     As a proximate result of Patel's breach of contract, the Plaintiffs have been damaged and continue to suffer damages.

## COUNT III
### (Fraud – Uhnder, Inc.)

69.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

70.     In negotiating and executing the merger between Uhnder and DG, Uhnder made materially false statements of fact to the Plaintiffs. In particular, as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Uhnder knowingly and intentionally misrepresented the following:

    a.    the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

    b.    the status and/or existence of the Series D funding, including that the funding was set to close imminently and that it would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG; and

    c.    that time was of the essence to finalize a merger between Uhnder and DG.

71.     At the time of its misrepresentations, Uhnder knew that they were false.

72.     The Plaintiffs, recognizing that important details about Uhnder's valuation and funding plans were in Uhnder's exclusive control, and recognizing that Uhnder expressly guaranteed that it did not make "any untrue statement of a material fact or omit[ ] to state any material fact" in inducing the Plaintiffs to agree to the merger (Merger Agreement, § 4.8), reasonably relied on Uhnder's misrepresentations in deciding to approve the merger.

73.     As a proximate result of Uhnder's fraud, the Plaintiffs have been damaged and continue to suffer damages.

## COUNT IV
**(Fraud – Sanjay Patel)**

74.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

75.     In negotiating and executing the merger between Uhnder and DG, Patel made materially false statements of fact to the Plaintiffs. In particular, as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Patel knowingly and intentionally misrepresented the following:

  a. the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

  b. the status and/or existence of the Series D funding, including that a term sheet existed, the funding was set to close imminently, and the funding would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

  c. that he had resigned from Uhnder and had no conflict of interest in the merger negotiation;

  d. that time was of the essence to finalize a merger between Uhnder and DG; and

  e. that Patel had ended his consulting agreement with Uhnder.

76.     At the time of his misrepresentations, Patel knew that they were false.

77.     The Plaintiffs, knowing that Patel was privy to specific details about Uhnder as a long-time friend and business partner of Uhnder CEO Manju Hegde, and knowing that Patel represented the Plaintiffs as the Stockholder Representative during the merger, reasonably relied on Patel's misrepresentations in deciding to approve the merger transaction.

78.     As a proximate result of Patel's fraud, the Plaintiffs have been damaged and continue to suffer damages.

## COUNT V
### (Fraudulent Concealment – Uhnder, Inc.)

79.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

80.     In negotiating and executing the merger between Uhnder and DG, Uhnder knowingly and intentionally concealed material facts from the Plaintiffs to induce the Plaintiffs to agree to the merger. In particular, Uhnder intentionally concealed the true value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG; the true status of the Series D funding; and Uhnder's plan to "trash" the value of the shares that the Plaintiffs would receive as the "real currency" for the transaction.

81.     At the time of its concealments, Uhnder knew that they were false.

82.     Uhnder, as the acquiring company with exclusive control over all information about its valuation and funding plans, held a position of influence and superiority over the Plaintiffs. As such, Uhnder had a duty to disclose all material facts that would affect the merger transaction between DG and Uhnder.

83.     The Plaintiffs, recognizing that important details about Uhnder's valuation and funding plans were in Uhnder's exclusive control, and recognizing that Uhnder expressly guaranteed that it did not make "any untrue statement of a material fact or omit[ ] to state any material fact" in inducing the Plaintiffs to agree to the merger (Merger Agreement, § 4.8), reasonably relied on Uhnder's misrepresentations in deciding to approve the merger transaction.

84.     As a proximate result of Uhnder's fraudulent concealment, the Plaintiffs have been damaged and continue to suffer damages.

14

## COUNT VI
### (Fraudulent Concealment – Sanjay Patel)

85.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

86.     In negotiating and executing the merger between Uhnder and DG, Patel knowingly and intentionally concealed material facts from the Plaintiffs to induce the Plaintiffs to agree to the merger. In particular, Patel intentionally concealed his continued conflict of interest; the true value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG; and the true status of the Series D funding.

87.     At the time of his concealments, Mr. Patel knew that they were false.

88.     Due to the fiduciary relationship between Patel and the Plaintiffs, and Patel's capacity as the Stockholder Representative during the merger, Patel had a duty to disclose all material facts that would affect the merger transaction between DG and Uhnder.

89.     The Plaintiffs, knowing that Patel was privy to specific details about Uhnder as a long-time friend and business partner of Uhnder CEO Manju Hegde,  and knowing that Patel represented the Plaintiffs as the Stockholder Representative during the merger, reasonably relied on Patel's misrepresentations in deciding to approve the merger transaction.

90.     As a proximate result of Patel's fraudulent concealment, the Plaintiffs have been damaged and continue to suffer damages.

## COUNT VII
### (DEL. CODE ANN. tit. 6, § 73 – Uhnder, Inc.)

91.     The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

92.     In negotiating and executing the merger between Uhnder and DG, Uhnder knowingly and intentionally made materially false statements of fact to the Plaintiffs. In particular,

as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Uhnder misrepresented the following:

  a. the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

  b. the status and/or existence of the Series D funding, including that a term sheet existed, the funding was set to close imminently, and the funding would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG; and

  c. that time was of the essence to finalize a merger between Uhnder and DG.

93. At the time of its misrepresentations, Uhnder knew that they were false, or acted with reckless disregard for their truth.

94. The Plaintiffs, recognizing that important details about Uhnder's valuation and funding plans were in Uhnder's exclusive control, and recognizing that Uhnder expressly guaranteed that it did not make "any untrue statement of a material fact or omit[ ] to state any material fact" in inducing the Plaintiffs to agree to the merger (Merger Agreement, § 4.8), reasonably relied on Uhnder's misrepresentations in deciding to approve the merger.

95. As a proximate result of Uhnder's fraud, the Plaintiffs have been suffered, and continue to suffer, an economic loss.

## COUNT VIII
### (DEL. CODE ANN. tit. 6, § 73 – Sanjay Patel)

96. The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

97.     In negotiating and executing the merger between Uhnder and DG, Patel knowingly and intentionally made materially false statements of fact to the Plaintiffs. In particular, as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Patel misrepresented the following:

    a.     the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

    b.     the status and/or existence of the Series D funding, including that the funding was set to close imminently and that it would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

    c.     that time was of the essence to finalize a merger between Uhnder and DG; and

    d.     that Patel had ended his consulting agreement with Uhnder.

98.     At the time of his misrepresentations, Patel knew that they were false, or acted with reckless disregard for their truth.

99.     The Plaintiffs, knowing that Patel was privy to specific details about Uhnder as a long-time friend and business partner of Uhnder CEO Manju Hegde, and knowing that Patel represented the Plaintiffs as the Stockholder Representative during the merger, reasonably relied on Patel's misrepresentations in deciding to approve the merger transaction.

100.     As a proximate result of Uhnder's fraud, the Plaintiffs have been suffered, and continue to suffer, an economic loss.

## <u>COUNT IX</u>
### (17 C.F.R. § 240.10b-5 – Uhnder, Inc.)

101.    The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

102.    In negotiating and executing the merger between Uhnder and DG, Uhnder knowingly and intentionally made materially false statements of fact to the Plaintiffs. In particular, as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Uhnder misrepresented the following:

      a.    the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

      b.    the status and/or existence of the Series D funding, including that a term sheet existed, the funding was set to close imminently, and the funding would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG; and

      c.    that time was of the essence to finalize a merger between Uhnder and DG.

103.    At the time of its misrepresentations, Uhnder knew that they were false, or acted with reckless disregard for their truth.

104.    The Plaintiffs, recognizing that important details about Uhnder's valuation and funding plans were in Uhnder's exclusive control, and recognizing that Uhnder expressly guaranteed that it did not make "any untrue statement of a material fact or omit[ ] to state any material fact" in inducing the Plaintiffs to agree to the merger (Merger Agreement, § 4.8), reasonably relied on Uhnder's misrepresentations in deciding to approve the merger.

105.    As a proximate result of Uhnder's fraud, the Plaintiffs have been suffered, and continue to suffer, an economic loss.

## COUNT X
### (17 C.F.R. § 240.10b-5 – Sanjay Patel)

106.    The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

107.    In negotiating and executing the merger between Uhnder and DG, Patel knowingly and intentionally made materially false statements of fact to the Plaintiffs. In particular, as part of its fraudulent scheme to induce the Plaintiffs to agree to the merger, Patel misrepresented the following:

  a.    the value of Uhnder's stock, including the value of the shares the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

  b.    the status and/or existence of the Series D funding, including that the funding was set to close imminently and that it would significantly increase the value of the shares of Uhnder stock that the Plaintiffs would acquire as a result of a merger between Uhnder and DG;

  c.    that time was of the essence to finalize a merger between Uhnder and DG; and

  d.    that Patel had ended his consulting agreement with Uhnder.

108.    At the time of his misrepresentations, Patel knew that they were false, or acted with reckless disregard for their truth.

109.    The Plaintiffs, knowing that Patel was privy to specific details about Uhnder as a long-time friend and business partner of Uhnder CEO Manju Hegde, and knowing that Patel

represented the Plaintiffs as the Stockholder Representative during the merger, reasonably relied on Patel's misrepresentations in deciding to approve the merger transaction.

110.    As a proximate result of Uhnder's fraud, the Plaintiffs have been suffered, and continue to suffer, an economic loss.

## <u>COUNT XI</u>
### (Breach of Fiduciary Duty – Sanjay Patel)

111.    The Plaintiffs repeat and reallege each of the foregoing allegations as though fully set forth herein.

112.    As a director, officer, and shareholder of DG, Patel owed fiduciary duties of candor, loyalty, honesty, care, and good faith to the other DG shareholders, including the Plaintiffs.

113.    Patel breached his fiduciary duties by:

    a.    secretly maintaining a lucrative consulting agreement with Uhnder;

    b.    negotiating and executing a licensing agreement between Uhnder and DG that gave Uhnder a perpetual license to DG's valuable technology for insufficient consideration;

    c.    approving, and inducing the Plaintiffs to approve, Uhnder's acquisition of DG knowing full well that Uhnder was not valued as highly as he claimed; and

    d.    approving, and inducing the Plaintiffs to approve, Uhnder's acquisition of DG knowing full well that Uhnder planned on having a down round of funding that would deprive the company of any value.

114.    As a proximate result of Patel's fiduciary breaches, the Plaintiffs have been damaged and continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment in their favor and against Sanjay Patel and Uhnder, Inc. and that the Court enter judgment for damages, including without limitation rescissory, consequential, and expectation damages as a result of the unlawful conduct described herein, in an amount to be determined. The Plaintiffs further request that this Court award them costs, attorneys' fees, punitive damages, and such further relief as the Court may deem just and equitable. The Plaintiffs demand a jury trial on all issues so triable.

Dated: November 29, 2023                  Respectfully submitted,

Timothy A. Hudson                           By: /s/ Amanda N. Catalano
Amanda N. Catalano
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. LaSalle Street, 7th Floor
Chicago, Illinois 60604
Telephone: (312) 762-9496
thudson@tdrlaw.com
acatalano@tdrlaw.com

*Attorneys for Plaintiffs*